UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LUIS ALICEA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-10342-LTS |
| LAWRENCE J. McGUIRE, | ) ) ) | |
| Defendant. | ) ) | |

ORDER AND MEMORANDUM ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

March 5, 2010

SOROKIN, M.J.

The Defendant Lawrence McGuire's Motion for Summary Judgment is ALLOWED for the reasons set forth below.

I.   STATEMENT OF FACTS

For purposes of McGuire's motion for summary judgment, the Parties do not dispute the following facts, but do disagree concerning the inferences to be drawn from those facts.

In 2003, a grand jury of the Commonwealth of Massachusetts returned indictments against the Plaintiff, Luis Alicea, alleging violation of:

(1) M.G.L. c. 269, § 12E, prohibiting discharge of a firearm within a certain distance of a building and providing for a maximum punishment of "imprisonment in a jail or house of correction for not more than three months" as well as a fine;

(2) M.G.L. c. 269, § 10G, prohibiting knowing and unlawful possession of a firearm other than in a residence after two convictions for certain qualifying violent or drug offenses and providing for "imprisonment in the state prison of not less than

>    ten years nor more than 15 years" and;
>
> (3)   M.G.L. c. 269 § 10(h) prohibiting possession of a firearm without complying with the requirements relating to a firearm identification card and providing for "imprisonment in a jail or house of correction for not more than one year."[1]

The grand jury did <u>not</u> charge Alicea with a violation of M.G.L. c. 269, § 10(a) which prohibits the knowing and unlawful possession of a firearm outside the home. That offense provides for "imprisonment in the state prison for not less than two and one-half years nor more than five years, or for not less than one year nor more than two and one-half years in a jail or house of correction." Under Massachusetts law, the criminal offense defined at § 10(a) is a lesser included offense of the § 10G. offense prohibiting the same conduct after the two qualifying predicate convictions.

Under the issued indictments, Alicea faced a mandatory minimum sentence of ten years in state prison if convicted on the § 10G charge. The state court appointed McGuire (of the Committee for Public Counsel Services) to represent Alicea. McGuire engaged in plea negotiations with Alexander Cain, the Assistant District Attorney prosecuting Alicea on behalf of the Essex County District Attorney's Office. Ultimately, they made the following oral agreement: Alicea would plead guilty to a violation of M.G.L. c. 269, § 10(a) (the uncharged lesser included offense to the 10G charge) in exchange for Cain's recommendation of a sentence of three-to-five years. The Commonwealth would dismiss the remaining indictments. Alicea accepted the oral agreement negotiated by McGuire.

On March 18, 2004, Alicea appeared before Judge Whitehead of the Essex County

---

[1] This statute also provided for greater punishment in the event of a "second violation." A later amendment to the statute increased the punishments for a first offense to two years imprisonment. St. 2006, c. 48, §§ 5-7.

Superior Court, along with McGuire and ADA Cain.  At the outset, ADA Cain explained the terms of the deal – Alicea would plead guilty to "possession of a firearm" and the parties would submit "an agreed upon recommendation of not less than three years and not more than five years in the State Prison."  Docket #29-7 at 3.  In describing the plea deal, however, Cain erroneously described the manner in which the lawyers had translated the plea agreement into the pending charges.  Rather than stating (as had been agreed) that the Commonwealth would enter a nolle prosequi as to the First and Third Indictments and that Alicea would plead guilty to a lesser-included charge on the Second Indictment, Cain stated that the Commonwealth would enter a nolle prosequi as to First and Second Indictments and that Alicea would plead to the Third Indictment.  Id.  In response, the Court asked Cain to state the maximum punishment for the possession offense to which Cain replied five years in state prison.  Docket 29-7 at 3.  Cain was wrong – he stated the maximum punishment applicable to the offense for which he and McGuire had agreed Alicea would plead to rather than the offense for which he had just told the judge Alicea was pleading to.

Thereafter, the Court followed Cain's lead by taking a plea to the Third Indictment.  The Clerk asked Alicea if he was pleading to the third offense of failing to comply with the requirements relating to firearms identification cards.  Id. at 3-4.  Virtually tracking the language of the Third Indictment, the Judge explained to Alicea that:

> The indictments to which you are pleading guilty reads in material, as follows: On March 1, 2003, at Lawrence, not being authorized by law you did own, possess, or transfer possession of a Colt Police .38 without complying with the requirements relating to the firearm identification card provided for in General Laws Chapter 140, Section 129C.

Docket #29-7 at 8

The oral plea agreement, however, according to the undisputed evidence before the

Court, had provided for the Commonwealth to enter a nolle prosequi on that charge. Immediately thereafter, the Judge explained the Commonwealth's burden in terms of a violation of § 10(h) (as no mention was made of the requirement that the Commonwealth prove the defendant was outside the home):

> Essentially what the government alleges, what it would have to prove if this case went to trial and what you are pleading guilty to is this: That on March 1, 2003, you had on your possession or in a place under your control a working handgun, that you knew you had it on your person, or in another placed under your control, you intended to have it on your person or under your control and you either had the ability and the intention to determine what was done with that handgun. And the government further alleges that at the time that you possessed that handgun you didn't have any legal authority to possess that. Do you understand that is what you are pleading guilty to?
>
> Docket #29-7 at 8.

Alicea answered the Judge's question with an unequivocal "Yes." Id. at 9. Cain then proceeded to state the facts the Commonwealth would prove if the case proceeded to trial:

> Had this matter gone to trial the Commonwealth would expect to prove that on March 1, 2003, Officers received a 911 call of a single shot fired outside of 69 Center Street. The officers arrived at the scene, several officers arrived on the scene. And as they started to exit their cruiser, they heard a second shot fired from behind 69 Center Street. More officers arrived and a neighbor began to point to the officers to the back of 69 Center Street. The officers approached the back yard, which was fenced in. They found a fresh set of wet prints that were on wooden stairs that led to a doorway in the rear of the house. Sergeant Mooney knocked on the door, believing that was an entry way into a common hallway. When the officer knocked on the door, the door swung open several inches. The officers illuminated the inside of the room with their flashlights and observed an extremely intoxicated male, identified as this defendant, lying on the floor. The officers observed what appeared to be a .38 caliber revolver lying approximately six inches from the defendant's left hand. When the officers illuminated the room, the defendant started motioning towards the weapon. At that time Sergeant Mooney stopped on the firearm and secured the weapon. The officers again noted that the defendant appeared extremely intoxicated. They had an opportunity to inspect the .38 caliber, which had two spent shell casings inside the chamber – the cylinder, excuse me.
> The weapon was submitted to the State Lab, Your Honor, for analysis and it did qualify according to ballistics test as a firearm, as defined under Massachusetts law. And I should say, Your Honor, so the record is clear, the description of the

shots fired were that they were fired into the air, in other words not at another person.

Id. at 9-10.

Alicea admitted that the facts stated by Cain were "true" and that the gun was his. Id. at 11. Notably, the factual recitation did not include an assertion that Alicea was in possession of the firearm outside of his home. Alicea maintains that the colloquy established Alicea possessed the firearm in his residence. Plaintiff's Statement of Undisputed and Disputed Facts/Issues, Docket # 37 at ¶12. It did not. Alicea admitted to possessing the firearm in or at 69 Center Street without any discussion or admission regarding the location of his residence. Docket 29-7 at 9-10. Earlier in the colloquy, however, he told the judge that, prior to his arrest, he had resided at 71 Center Street.[2] Id. at 5. In addition, the elements of § 10(h) do not require proof of possession within the home. M.G. L. ch. 269, § 10(h); Massachusetts Criminal Model Jury Instructions Instruction 7.620

Later in the colloquy, the Judge explained to Alicea that the:

maximum penalty, [for] possession of a firearm is five years in State Prison. Both attorneys are asking that I impose a sentence of three to five years in the State Prison on this offense. That is what I'm going to do.

Docket #29-7 at 15.

Alicea stated that he understood. Id.

At the conclusion of the colloquy, the Court accepted the plea and imposed the jointly recommended sentence of three-to-five years in State Prison. Id. at 19. The Clerk then recited

---

[2] In addition, contrary to Alicea's contention at ¶ 14 of his factual statement, Cain did not admit in his deposition at pages 8-11 that Alicea admitted in his colloquy to possessing the firearm in his residence.

that the Court had accepted Alicea's plea to "count number three, charging [him] with possession of a firearm" and ordered a sentence "of not less than three years nor more than five years." Similarly, the docket reflects a plea to Indictment Three and a nolle prosequi of Indictments One and Two.

Several days later, Cain called McGuire to inform him that the Department of Corrections had raised a concern about the back of the indictment. Cain stated that he intended to file a motion to amend the statutory reference to ensure it cited M.G.L. c. 269 § 10(a) as the parties had negotiated. McGuire, thinking (mistakenly) that the Indictment still referenced § 10G (and that this was the source of DOC's concern) assented without further inquiry, discussion or review. Cain submitted (without first providing a copy to McGuire) a motion to amend Indictment Three's citation from § 10(h) (as was issued by the grand jury) to § 10(a). The Superior Court allowed the assented to motion on March 26, 2004.

On the record before the Court, the agreed-to sentence was illegal in that: Alicea did not admit to facts sufficient to support a conviction under § 10(a); and, the conviction under § 10(h) authorized a maximum sentence of one year -- not the three-to-five year sentence imposed. In 2007, Alicea brought this error to the Court's attention. The Court vacated his sentence and imposed a new one-year sentence resulting in his release from custody. The Court also restored Indictment Three to its pre-amendment state (i.e., charging a violation of § 10(h) rather than of § 10(a)).

II.     DISCUSSION

Alicea has filed no affidavits or evidence in opposition to McGuire's motion for summary judgment. Alicea did file a statement of material facts as to which there is a genuine dispute, pursuant to L.R. 56.1. Essentially, he argues that inferences drawn in his favor from the undisputed facts are sufficient to defeat McGuire's motion.

Alicea brings two claims against McGuire: (1) Count IV, for conspiracy to violate his civil rights, pursuant to 42 U.S.C. §§ 1983, 1988, and (2) Count II, for common law intentional or reckless infliction of emotional distress.[3]

Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991)(quoting Gearset v. Oslo Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rogan v. City of Boston, 267 F.3d 24, 26 (1st Cir.2001) (citing Fed. R. Civ. P. 56(c)). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37

---

[3] Counts I (for Malpractice - Negligence) and III (for violation of M.G.L. c. 93A) were dismissed by Order dated December 4, 2008.

(1st Cir.1995)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

### The Section 1983 Conspiracy Count

To prevail on his claim for conspiracy under 42 U.S.C. §§ 1983, 1988, Alicea must establish at a minimum "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties 'to inflict a wrong against or injury upon another' and 'an overt act that results in damages.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988) (quoting Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (quoting Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir.1973)).  The undisputed facts, augmented by drawing all reasonable inferences in Alicea's favor, fail to permit the conclusion that McGuire conspired with Cain (or any other state actor) or agreed to inflict a wrong upon Alicea.

The undisputed facts establish that Alicea faced a ten-year mandatory minimum sentence if convicted on Indictment Two.  McGuire and Cain negotiated a plea to a lesser-included charge under this Indictment with a joint recommendation of a three-to-five year sentence and the dismissal of the other charges.  This was a lawful plea agreement.  McGuire discussed the agreement with Alicea and he agreed to it.  Unsurprisingly, Alicea then told the judge during the

plea colloquy that he understood that he would receive a three-to-five year sentence.

At the plea hearing, Alicea formally pled to the Third Indictment and admitted to facts supporting that charge. He neither pled to nor admitted to facts supporting either the charge alleged in the Second Indictment or the lesser-included offense contemplated by the plea agreement. No evidence indicates that any person at the plea colloquy appreciated either: (a) the illegal sentence imposed on the Third Indictment, or, (b) the divergence between the plea agreed upon prior to the hearing and the plea recited at the hearing.

Alicea's argument that several days later McGuire and Cain realized the error and sought to deprive Alicea of the "benefit" of the illegal sentence by way of the motion to amend fails for several reasons. First, Alicea's premise that the prosecution "propose[d] an illegal sentence that the Defendant [McGuire] advise[d] his client to accept," (See Docket # 38 at 5) is simply wrong. The plea agreement negotiated by McGuire and Cain and accepted by Alicea was legal. Second, no direct evidence indicates that McGuire appreciated the illegality of the sentence at the time of the motion to amend. Third, the totality of the facts and circumstances do not permit the conclusion (or the inference) that McGuire, by agreeing to the Motion to Amend or otherwise, conspired with Cain to impose an illegal sentence or to deprive Alicea of the "benefit" of the illegal sentence. At the time Cain sought McGuire's assent to the Motion to Amend there was no "benefit" from the illegal sentence to which Alicea was entitled.

In Alicea's view, he could have insisted upon a one year sentence under Indictment Three and raised double jeopardy as a bar to a revival of the prosecution under §§ 10G or 10(a). This is incorrect. Entry of a nolle prosequi before trial is not a bar to a subsequent prosecution for the same offense under Massachusetts law. Commonwealth v. Rollins, 354 Mass. 630, 632

(1968)("[a] nolle prosequi before a jury has been empaneled does not operate as an acquittal of the charge discontinued")(citing Commonwealth v. Wheeler, 2 Mass. 172 173 (1806) and its progeny).

Moreover, despite Alicea's conviction on the Third Indictment, double jeopardy prohibitions of the state and federal constitution did not bar prosecution (or re-prosecution) of Alicea for either a § 10G or § 10(a) offense. Both state and federal law apply an elements-based double jeopardy analysis. Commonwealth v. Buckley, 76 Mass.App.Ct. 123, 126 (2010) (Massachusetts follows the elements-based approach permitting separate prosecutions when each offense includes an element the other lacks); Ball v. U.S., 470 U.S. 856, 861 (1985) (to determine whether the Congress intended the same conduct to be punishable under two criminal provisions the appropriate inquiry is whether each provision requires proof of a fact which the other does not) (citing Blockburger v. United States, 284 U.S. 299, 304(1932)). Under these tests the § 10(h) offense does not bar a prosecution for a violation of § 10(a) (and Alicea has submitted no argument to the contrary). Cf. Massachusetts Criminal Model Jury Instructions Instruction 7.620 (requiring Commonwealth to prove the absence of an FID card under § 10(h)) with Instruction 7.600 (requiring Commonwealth to prove possession outside the home or business under § 10(a)).[4]

Thus, there was no "benefit" to which Alicea was entitled after the plea hearing. Without such a possible benefit there is no reasonable inference of a conspiratorial agreement. Simply

---

[4] To the extent Alicea's res judicata argument warrants a different analysis than the double jeopardy argument, the Court need not undertake the analysis as the factual predicate for the res judicata argument – that Alicea admitted to possessing the firearm in his residence during the plea colloquy – has not been established.

put, McGuire may have participated in actions that resulted in an illegal sentence, but on this record, there is neither evidence nor inferences to support the conclusion that McGuire agreed to inflict a wrong.  Moreover, the case upon which Alicea relies heavily, Jackson v. Faber, 834 F.Supp. 471, 473 (D.Maine.1993) differs materially from this case.  There the Plaintiff alleged in his complaint that the defense attorney had conspired with others, including the prosecutor, to have him plead guilty to an offense that he did not commit in order to support a subsequent civil suit against the Plaintiff that would, in the form of a referral fee, inure to the benefit of the defense attorney.  Those facts, considered on a motion to dismiss rather than summary judgment, are not analogous to Alicea's case.  Accordingly, I ALLOW the defendant's Motion for Summary Judgment on Count IV of the Complaint.

      Intentional Infliction of Emotional Distress

      To establish the claim of intentional infliction of emotional distress Alicea must adduce evidence sufficient to prove that: (1) McGuire intended to inflict emotional distress or knew it to be the likely result of his actions, (2) the conduct was "extreme and outrageous, . . . beyond all possible bounds of decency and  . . .  utterly intolerable," (3) McGuire's conduct caused the emotional distress, and (4) the distress was "severe[, such] that no reasonable [person] could be expected to endure it."  Butner v. Department of State Police, 60 Mass.App.Ct. 461, 470 (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976)).

      On the record before the Court, Alicea cannot meet his burden of proof.  Alicea agreed to accept a plea to a sentence of three-to-five years in exchange for the dismissal of other charges.  The plea contemplated by the agreement was legal and not unreasonable, however, Alicea actually pled to an offense which did not authorize a sentence exceeding one year.  Neither

McGuire's participation in the plea nor his subsequent assent to a motion attempting to render the plea legal can support an intentional infliction of emotional distress claim. Alicea faced a possible ten-year mandatory minimum sentence. The plea agreement proposed was legal and would result in a disposition of three-to-five years. Alicea assented to that agreement. McGuire attempted to effectuate his client's wishes and, contrary to Alicea's wholly unsupported allegation, at the time of the motion to amend Alicea did not face, legally, only one year in custody. See supra. Accordingly, I ALLOW the defendant's Motion for Summary Judgment on Count II of the Complaint.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Docket # 25) is ALLOWED.

                                                  /s / Leo T. Sorokin
                                               UNITED STATES MAGISTRATE JUDGE